[L. A. No. 22185. In Bank. Feb. 20, 1952.]

BEN H. BROWN, as Public Guardian, etc., Petitioner, v. CHAS. L. OVERSHINER et al., Respondents.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Petitioner.

S. V. O. Prichard for Respondents.

SHENK, J.—The petitioner, as public guardian of the county of Los Angeles, seeks through the office of the writs of mandate and prohibition to have determined the respective duties and obligations of the petitioner as public guardian, his predecessor in office the respondent Chas. L. Overshiner,

and the respondent superior court, upon the consolidation by the county board of supervisors of the offices of public guardian and public administrator.

Effective December 1, 1945, the board of supervisors by ordinance established the office of public guardian pursuant to section 5175 of the Welfare and Institutions Code. The respondent Chas. L. Overshiner was appointed to that office, whereupon he subscribed to the oath of office and furnished the required official bond. He entered upon the discharge of his duties and during his term of office obtained upwards of 750 appointments of himself as public guardian.

On May 15, 1951, the board of supervisors adopted ordinances designed to effect the consolidation of the offices of public administrator and public guardian pursuant to the Welfare and Institutions Code, and to establish the position of head deputy public guardian. On June 27, 1951, the petitioner, who was and is the duly appointed public administrator of Los Angeles County, took the oath as public guardian and furnished the required bond. On the same date the respondent Overshiner accepted appointment as head deputy public guardian and qualified by taking the oath of office.

Questions have arisen whether the public guardian acts in an official capacity so that his successor automatically succeeds to all of his powers and duties in pending guardianship matters; or whether the appointment as public guardian of a ward was of a personal nature requiring the appointee to continue his administration unless and until he is removed and a successor appointed in regular course by petition and order. As a consequence the respondent Overshiner has retained possession of the books and records of his office until the matter has been resolved by a final judicial declaration. The parties are uncertain as to their respective liabilities under their official bonds. Title companies have refused to insure the titles of real property to be sold in pending proceedings. Payments of benefits to wards by the Veterans Administration are withheld pending decision. Any possible remedy by appeal or by application to the superior court in the first instance was deemed inadequate because of the numerous pending guardianships and because the delay in administering estates while awaiting a final determination would in some cases impose hardships on the wards. In two pending proceedings before the respondent court, that court announced its intention, unless restrained or otherwise directed by an

appropriate writ, to require that the usual procedures be taken by petition for removal and appointment of the successor.

The petitioner seeks the writ of mandate directing the respondent Overshiner to deliver to the petitioner as successor to the office of public guardian the funds and records in the pending matters; and appropriate writs restraining the respondent court from taking further proceedings in pending matters except by recognition of the petitioner as the duly appointed, qualified and acting public guardian succeeding automatically to the office upon the consolidation of that office with that of public administrator. The public and pressing nature of the questions involved seemed to render other possible remedies inadequate.

The provisions relating to the office of public guardian are contained in article 9, chapter 1, part 1, division 6 (§§ 5175-5189) added to the Welfare and Institutions Code in 1945. (Stats. 1945, ch. 907.)

Section 5175 permitted the Board of Supervisors of Los Angeles County to ''create the office of public guardian and such subordinate positions as may be necessary and fix compensation therefor,'' and to make the necessary appointments. The use of the word ''create'' does not constitute the provision an unlawful delegation of the power vested in the Legislature by article XI, section 5, of the state Constitution. The effect of the legislative language is to create the office of public guardian with permissive utilization thereof in accordance with the code provisions depending on subsequent local action. There are familiar instances of the creation of offices by the state Legislature with permissive establishment thereof depending on future action of the local political entity. (*Board of Law Library Trustees of Orange County* v. *Board of Supervisors,* 99 Cal. 571 [34 P. 244], county law libraries; *Housing Authority of Los Angeles County* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794], local housing authority; *In re Hough,* 24 Cal.2d 522 [150 P.2d 448], Gov. Code, § 27700, public defender.) The legislative choice of language in describing the local action is merely fortuitous. The effect of the board's ordinance was to exercise the right to establish the office of public guardian created by the Legislature in adding the pertinent sections to the Welfare and Institutions Code.

Pursuant to section 5176 as an alternative method of establishing the office, the board by ordinance may direct that the public administrator shall be ex officio public guardian.

Pursuant to section 5177 the board may terminate the office of public guardian. Section 5179 provides that when another than the public administrator has been appointed as public guardian, the board may terminate the appointment and by ordinance designate the public administrator to act as public guardian "and all authority shall vest in the successor."

Pursuant to section 5181 the public guardian is authorized to apply for appointment as guardian of the person or estate or both of any person in the county who is a patient or the recipient of aid under the code and requires a guardian, and his estate does not exceed $5,000 in probable value. Section 5182 provides for an official bond. All funds are to be deposited in the county treasury and disbursed by proper warrant. (§ 5183.) By section 5186 no guardianship fees are to be charged or received by the public guardian; nor may the county clerk charge for the filing of documents or for official service (§ 5187). Expenses of the public guardian may be a charge upon the county although reimbursement may be had from the estate (§ 5188).

No serious question has been presented as to the validity of the ordinances adopted by the board of supervisors to establish the office of public guardian and subsequently to consolidate that office with the office of public administrator. The office was validly established as of December 1, 1945, by the amendment of a salary ordinance adopted on May 29, 1945. Two ordinances were adopted on May 15, 1951. The first, an amendment to a salary ordinance of May 27, 1947, repealed the provision for the appointment of a public guardian, established the position of head deputy public guardian, and provided that the public administrator should act as ex officio public guardian without additional compensation. The second added two sections to the Administrative Code of Los Angeles County and provided that pursuant to section 5176 of the Welfare and Institutions Code the public administrator should be ex officio public guardian, and that pursuant to section 5177 the separate office of public guardian should be terminated. On July 31, 1951, the board adopted an amendatory and repealing ordinance relative to the foregoing two sections of the county Administrative Code whereby the existence of the office of public guardian was recognized, the public administrator was designated as ex officio public guardian, and the appointment of another as the public guardian was terminated, in conformity with section 5179 of the Welfare and Institutions Code. Operation of this ordinance was made

retroactive to June 15, 1951. The board expressly declared that in enacting the second ordinance of May 15 it was the intention to follow the provisions of section 5179 of the Welfare and Institutions Code. The clarification was apparently deemed essential only for the technical purpose of coordinating the ordinance enactments with the prior establishment of the separate office of public guardian and with the May 15th amendment to the salary ordinance. The effect of each set of enactments was essentially the same. When read together the intent in the enactments of May 15th looking to consolidation of the offices is manifest.

The care of persons covered by the provisions of the Welfare and Institutions Code is unquestionably in the public interest, and the use of public funds to attain the legislative objectives is not within the scope of any constitutional prohibition. (See *San Francisco* v. *Collins*, 216 Cal. 187 [13 P.2d 912].) The appointment of a guardian of the person and estate of the wards is in part to effectuate the reimbursement to the state of charges undertaken in the administration of the salutary provisions of the code. Where the provisions of section 5175 et seq. do not apply, other provisions admit of the appointment of a guardian. (See Welf. & Inst. Code, §§ 2603, 2605, 5077.) The administration of the estates of wards through the public office in appropriate cases is also in their personal interest, to promote their personal welfare, conserve their properties and protect their estates from dissipation by excessive costs or otherwise. In counties to which section 5175 et seq. apply, the cost of effecting these objectives other than through the public office thus created could be prohibitive.

The public interest and legislative intent would not be subserved by a judicial declaration that makes a distinction under this statute in the course to be pursued upon official succession. In cases of public administration of decedent's estates, public supervision or liquidation of insurance and banking institutions and the like, the successor to the office of public administrator, commissioner or liquidator upon qualification is vested with the authority of the predecessor in office without the necessity of filing a petition for the removal of the one and the appointment of the successor. (See *County of Los Angeles* v. *Kellogg*, 146 Cal. 590 [80 P. 861]; *Mercantile Trust Co.* v. *Miller*, 166 Cal. 563 [137 P. 913]; *Mitchell* v. *Taylor*, 3 Cal.2d 217 [43 P.2d 803]; *Estate of Miller*, 5 Cal. 2d 588 [55 P.2d 491]; *Richardson* v. *Superior Court*, 138

Cal.App. 389 [32 P.2d 405] ; *Weadon* v. *Shahen,* 50 Cal.App.2d 254 [123 P.2d 88].) By three sections of the Welfare and Institutions Code (§§ 5178-5180) it is provided that all authority of a predecessor in the office of public guardian shall vest in the successor. Succession thereby becomes a statutory matter without necessity for removal of the predecessor and appointment of the successor as in cases of private guardianship. The Legislature might well be deemed to have foreseen the necessity for the statutory vesting of successive authority since otherwise, as shown by the record, the expense and delay involved would place serious obstacles in the way of the efficient and economical administration of the law and thereby defeat the legislative objective. The weight to be accorded the personal element in the initial appointment and in succession in the office has been resolved by the Legislature. By appropriate provision it was deemed that the public interest outweighed the matter of personal selection in those cases where the statute applied. Protection is afforded by the requirement of an official bond, by accountability for faithful performance, and in the judicial scrutiny and confirmation given to the guardian's administration.

■ The public guardian is appointed and qualified as in the case of other public officers. He collects no fees but is paid a salary. His personal interest is not dependent on his continued administration of the estates after the appointment of a successor. There would seem to be no possible obstacle to a compliance with the implied direction of the statute to recognize the vested authority in a successor without further specific procedures. In *Rogers* v. *Hoberlein* (1858) 11 Cal. 120, it was held that a public administrator was entitled to complete the administration of estates commenced before his term of office expired. But that holding was also held to depend upon the construction of a law which, contrary to that involved here, did not disclose the vesting of authority in the successor by operation of the statute. The personal interest of a public administrator in the continued administration is certainly not present under a law which provides that no fees shall be collected by virtue of the office and the sole personal interest is in the collection of salary which ceases upon the appointment of a successor. To overcome the effect in part of that case a statute in 1939 adding section 1152 to the Probate Code provided that where the compensation of the public administrator is paid by salary and not by fees his authority should cease upon the termination of his office

and vest in his successor. A declaration in the prior case that authority did not vest in the absence of a provision directing that the books and records be turned over to the successor is now also overcome by section 1850 of the Government Code. That section provides that every officer is entitled to the possession of all books and papers pertaining to his office or in the custody of his predecessor by virtue of his office.

 The foregoing shows that the Legislature intended in enacting section 5175 et seq. of the Welfare and Institutions Code that the public guardian be a public officer, and that the authority of successive officers should be automatic and without the necessity of a court order. Provisions which, as here, do not infringe on the constitutional rights of individuals or violate constitutional inhibitions on legislative action, cannot be held to interfere with the judicial power vested in the courts. In such matters the court acts by virtue of the statute. (*Guardianship of Salter*, 142 Cal. 412 [76 P. 51]; *Collins* v. *Superior Court*, 52 Cal.App. 579 [199 P. 352].)

Let a peremptory writ of mandate and a peremptory writ of prohibition issue as prayed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.