[No. D010095. Fourth Dist., Div. One. July 23, 1990.]

Conservatorship of the Person of BERNICE CABANNE.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
BERNICE CABANNE, Objector and Appellant.

COUNSEL

Frank & Ayers and Robert D. Frank for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Janice L. Ingold, Deputy County Counsel, for Petitioner and Respondent.

OPINION

WIEN, J.*—On February 14, 1989, the County of San Diego (the County) petitioned to reestablish the conservatorship of Bernice Cabanne (Cabanne) pursuant to Welfare and Institutions Code section 5350 et seq. Following a hearing on the petition on April 28, 1989, at which time the court also heard a collateral issue of whether the currently acting successor conservator, Janlee Wong, was properly appointed, the court ordered reestablishment of the conservatorship and Janlee Wong was appointed conservator for Cabanne, who now appeals.

### FACTS

On March 15, 1988, conservatorship of Cabanne was reestablished for one year and the public conservator, Richard J. Thomson, was appointed conservator. On July 21, 1988, Thomson was relieved as conservator as to all cases for which he had been appointed and the County designated Janlee Wong as public conservator. On August 11, 1988, without notice to Cabanne or her attorney of record, Wong was appointed successor public conservator of all cases in which Thomson had been appointed to serve as public conservator. The order included the Cabanne conservatorship.

At the hearing on reestablishment, the court first heard a motion by Cabanne to strike the petition on the ground that Cabanne was entitled to notice of the appointment of successor conservator pursuant to Probate Code section 2680 et seq. and lacking such notice, the appointment was invalid and therefore Wong was not authorized to petition for reappointment under Welfare and Institutions Code section 5361. The motion was denied.

---

* Assigned by the Chairperson of the Judicial Council.

After disposition of the motion to strike the court proceeded with the hearing to reestablish Cabanne's conservatorship. The court heard the testimony of Dr. William J. Vargas, a doctor appointed by the County mental health department, who testified that Cabanne suffered from schizophrenia, paranoid type, a mental disorder which prevented Cabanne from providing for her own food, clothing and shelter. He testified that she told him that someone was trying to kill her on the way to the examination. He also testified that during the examination she was hallucinating by talking to voices and by stating that she saw a dragon fly by the window. Dr. Vargas further testified that Cabanne was not capable of accepting voluntary treatment and that she did not understand that she had a mental disorder. He stated that she had been in institutions since she was very young.

At the conclusion of the testimony, no argument was made against the petition as to the sufficiency of the evidence to establish that Cabanne remained gravely disabled and the court so found. No objection was made to the appointment of Janlee Wong as conservator and he was reappointed as conservator of the person of Cabanne. The past acts of the conservator were ratified, also without objection.

## DISCUSSION

In spite of the lack of argument at the hearing regarding the issue of grave disability, Cabanne has appealed from that finding, as the notice of appeal recites. Cabanne's briefs on appeal fail to argue the issue so we may assume this basis for appeal has been abandoned. In any event, the evidence adduced at the hearing fully supports the finding by the court of grave disability and that finding will not be disturbed.

■ The remaining issue is whether the public conservator, Janlee Wong, the County-designated successor to Richard Thomson, had the authority to file a petition to reestablish the conservatorship of the person of Cabanne.

The Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) has among its purposes "[t]o provide individualized treatment, supervision, and placement services by a conservatorship program for gravely disabled persons." (Welf. & Inst. Code, § 5001, subd. (e).)

Welfare and Institutions Code section 5350 provides that a "conservator of the person . . . may be appointed for any person who is gravely disabled as a result of mental disorder . . . ." Conservatorship under the act may be initiated by petition filed by an officer of the county providing conservator investigation upon a recommendation by a person in charge of an agency

providing evaluation, or a facility providing intensive treatment, that a person in his care is gravely disabled as a result of a mental disorder.

The procedure for the appointment of a conservator is set forth in Welfare and Institutions Code section 5355 which provides: "If the conservatorship investigation results in a recommendation for conservatorship, the recommendation shall designate the most suitable person, corporation, state or local agency or county officer, or employee designated by the county to serve as conservator. No person, corporation, or agency shall be designated as conservator whose interests, activities, obligations or responsibilities are such as to compromise his or their ability to represent and safeguard the interests of the conservatee. Nothing in this section shall be construed to prevent the State Department of Mental Health from serving as guardian pursuant to Section 7284, or the function of the conservatorship investigator and conservator being exercised by the same public officer or employee.

"When a public guardian is appointed conservator, his official bond and oath as public guardian are in lieu of the conservator's bond and oath on the grant of letters of conservatorship. No bond shall be required of any other public officer or employee appointed to serve as conservator."

In the County, the section chief for the conservatorship program is appointed public conservator for the purposes of the act and is also, in effect, the conservatorship investigating officer as permitted by Welfare and Institutions Code section 5355. The public conservator, also pursuant to Welfare and Institutions Code section 5355, is appointed to serve as conservator in cases brought in the County under the Lanterman-Petris-Short Act.

During the time the conservatorship continues and prior to termination or reestablishment, no procedure is set forth in either the Welfare and Institutions Code or the Probate Code for the authority of a successor public administrator when the person occupying that position has resigned and a new person has been designated by the county to serve. Instead the issue is addressed in San Diego County Superior Court local rule 5.72 which provides that "where a public officer is appointed to serve as conservator, a successor in office to such public officer shall be deemed the successor conservator by operation of law."

Cabanne argues that San Diego County Superior Court local rule 5.72 is invalid because it conflicts with the notice provision of Probate Code sections 2683 and 2684, applicable by virtue of Welfare and Institutions Code section 5350, providing for the applicability of the Probate Code where not in conflict with chapter 3 of the Welfare and Institutions Code. Cabanne also argues that the rule, by not affording notice and the right to be heard

regarding the appointment of a new person as public conservator, violates constitutional rights of due process.

First of all, this court rejects Cabanne's argument that the incorporation in Welfare and Institutions Code section 5350 of the Probate Code conservatorship procedures necessarily means that all provisions of the Probate Code not expressly excepted by Welfare and Institutions Code section 5350 automatically become applicable in this action. (*Kaplan* v. *Superior Court* (1989) 216 Cal.App.3d 1354, 1359.) ■ " 'Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

At the time the issues in this case arose, provisions were found in the Probate Code as to the authority of successor public administrators,[1] and in the Welfare and Institutions Code as to the authority of successor public guardians.[2] As to both public administrators and public guardians authority terminates when the person appointed ceases to hold the position and his authority then vests in his successor.

A question regarding the application of the public guardian successor statute arose in *Brown* v. *Overshiner* (1952) 38 Cal.2d 432 [240 P.2d 617], where the Supreme Court considered whether the statute could be applied in pending guardianship matters or whether the appointment was of such a personal nature that a new petition or order would be required in each case. The court held that the statute should be interpreted in such a way that authority of successor guardians should be automatic in individual cases without the necessity of a court order. In arriving at its decision the court observed: "The public interest and legislative intent would not be subserved

---

[1] Probate Code section 1152, which was in effect during the time the issues under appeal arose, provides in pertinent part: "Where the compensation of the public administrator is paid by salary and not by fees, the authority of such public administrator shall cease upon the termination of his office as such public administrator, and his authority shall vest in his successor."

This code section was repealed effective July 1, 1989, and Government Code section 27444 came into effect. This new section provides: "The authority of the public administrator ceases upon termination of his or her tenure in the office of public administrator, and his or her authority vests in the successor in the office of public administrator. If letters have been issued to 'the public administrator' of the county, the letters are sufficient to authorize action by the successor and new letters need not be issued." (Added by Stats. 1988, ch. 1199, § 18, operative July 1, 1989.)

[2] In effect at the time the appealed issues arose was Welfare and Institutions Code section 8005 (reenacted without substantive change in Gov. Code, § 27433, operative July 1, 1989) which provides that: "The authority of the public guardian or ex officio public guardian shall cease upon the termination of his office as such public guardian or ex officio public guardian and his authority shall vest in his successor."

by a judicial declaration that makes a distinction under this statute in the course to be pursued upon official succession. In cases of public administration of decedent's estates, public supervision or liquidation of insurance and banking institutions and the like, the successor to the office of public administrator, commissioner or liquidator upon qualification is vested with the authority of the predecessor in office without the necessity of filing a petition for the removal of the one and the appointment of the successor. [Citations.]" (*Id*. at p. 437.)

In most of the instances referred to in *Brown* v. *Overshiner, supra*, the successor's authority is not dependent upon statute but rather on the nature of the office in relation to the function being served. ▮ In this case, the public interest in having the County designate the person occupying the position of public conservator outweighs the competing rights of personal selection. As stated in *Brown, supra,* 38 Cal.2d at page 438: "Protection is afforded by the requirement of an official bond, by accountability for faithful performance, and in the judicial scrutiny and confirmation given to the guardian's administration." Conservatees under the administration of a public conservator equally have protection afforded by the requirement of a bond, accountability, and the judicial scrutiny and confirmation given to the public conservator's administration.

Like the public guardian in *Brown, supra*, the public conservator is appointed and qualified as are other public officers. His personal interest is not dependent on his continued administration of Lanterman-Petris-Short conservatorships after the appointment of a successor. In short, there is no reasonable obstacle to recognizing the vested authority of a successor without further specific procedures. In this case, Cabanne has no more interest in the appointment of the successor public conservator than in the original designation which was, by statute, that of the County.

The notice provisions in Probate Code sections 2683 and 2684 are contained in chapter 9.5 of the Probate Code, "Appointment of Successor Guardian or Conservator." Probate Code article 1, chapter 9.5, applies to guardians and Probate Code section 2670 provides that when a vacancy occurs in the office of guardian, appointment of a successor guardian requires notice and hearing. Yet this section is only applicable in the case of a private guardian, not a public guardian. (Welf. & Inst. Code, § 8005 (now Gov. Code, § 27433); *Brown* v. *Overshiner, supra*, 38 Cal.2d at p. 432.) Probate Code, article 2 of chapter 9.5, refers to the procedures for the appointment of a successor conservator and like Probate Code article 1 requires notice and a hearing. However, it is clear that Probate Code article 2, also like article 1, is intended to apply to private conservators. Probate Code section 2682 refers to the petition and requires, inter alia, the name

and address of the conservator and if that person is the petitioner whether or not he or she is a creditor or debtor of the conservatee, allegations not required by Welfare and Institutions Code section 5355 when a Lanterman-Petris-Short conservatorship is first established.

Thus, in construing the incorporation provisions of Welfare and Institutions Code section 5350, harmony with the Lanterman-Petris-Short conservatorship provisions does not require application of the notice provisions relied on by Cabanne to invalidate the order appointing Wong as conservator.

■ Nor is there any constitutional infirmity in not affording notice and a hearing. Due process requirements are activated when the conservatorship is first established and when reestablishment is contemplated. (See *Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 724-729 [229 Cal.Rptr. 875].) The succession by Wong as public conservator replacing Thomson does not affect any liberty interest of Cabanne. The governmental interest intruding upon Cabanne's personal interest and liberty was at stake when the conservatorship was reestablished in March of 1988. Notice and hearing were then required and afforded. The same intrusion upon Cabanne's liberty interest was involved in February of 1989 when the petition to reestablish was filed and in April when a full hearing, the subject of this appeal, satisfying all constitutional requirements, was held. No assertion is made that between August 11, 1988, and the date of the reestablishment petition, February 15, 1989, Cabanne was no longer gravely disabled. To the contrary, the evidence was that Cabanne was gravely disabled during this period and the conservatorship would have continued. Thus the only issue that could have been litigated if notice and a hearing had been afforded is whether the successor public conservator would serve instead of the retired public conservator. This issue is hardly of constitutional dimension. Furthermore, to require notice and public hearing would entail potential public expense outweighing the benefits to be obtained. Wong succeeded Thomson as public conservator in perhaps 1,500 cases. To require a notice and an individual hearing in each case would be unduly burdensome and expensive. As pointed out in *Conservatorship of Moore, supra,* at page 731: "In this context, a footnote from *Parham* v. *J.R.* (1979) 442 U.S. 584 [citations] is particularly apt: ' "It should be realized that procedural requirements entail the expenditure of limited resources, that at some point the benefit to individuals from an additional safeguard is substantially outweighed by the cost of providing such protection, and that the expense of protecting those likely to be found undeserving will probably come out of the pockets of the deserving." [Citations.]' (*Id.* at pp. 605-606, fn. 14 [citations], citing Friendly, *Some Kind of Hearing* (1975) 123 U.Pa.L.Rev. 1267, 1276.)"

██ Even if, arguably, a required process may not have been followed in ordering Wong as successor conservator in 1988, this does not affect the petition filed in March of 1989. The issue here is the power to apply for reappointment. If Wong did not succeed to the authority to apply for reappointment, who would have that authority? A conservatorship petition may be filed by the conservatorship investigating officer. (See *Kaplan* v. *Superior Court, supra*, 216 Cal.App.3d at p. 1358.) Since Wong, the public conservator, is in effect also the conservatorship investigation officer, Wong would have authority to petition for reestablishment in that capacity. The act of petitioning for reestablishment is ministerial. The gravamen of the action is not who files but whether the conservatee remains gravely disabled and requires care and treatment. These were the issues properly addressed by the hearing which was fairly and properly conducted. No objection was made at the hearing to the qualifications of Wong as conservator. Cabanne was properly found to be gravely disabled. Wong was duly reappointed conservator. Cabanne has suffered no prejudice. Instead she continues to receive the care and treatment her condition requires.

## DISPOSITION

The order reestablishing conservatorship and appointing Janlee Wong as conservator is affirmed.

Todd, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 1990.